ELECTRONIC

**Oct. 6, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

# 09-23015-CIV-LENARD/GARBER

CASE NO.:

AVISENA, INC., a Florida
corporation,

          Plaintiff,

v.

CARLOS E. ESCOBAR,

          Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiff, Avisena, Inc. ("Avisena" or the "Company"), sues the Defendant, Carlos E.
Escobar ("Escobar" or "Defendant"), and in support thereof states as follows:

## NATURE OF ACTION

1.    This is a lawsuit seeking damages and injunctive relief arising out of Escobar's
breaches of a contract between Avisena and Escobar and for damages against Escobar for his
violation of the Computer Fraud & Abuse Act of 1986, 18 U.S.C. § 1030 et seq. ("CFAA") and
for conversion under Florida common law.

## PARTIES, JURISDICTION AND VENUE

2.    Avisena is a corporation duly organized and existing pursuant to the laws of the
State of Florida.  Avisena is a premier provider of medical billing solutions and business
solutions for the healthcare industry.  Through the use of advanced technology, Avisena delivers
comprehensive practice and revenue management services to healthcare organizations of all
sizes.  Avisena's approach combines industry leading technology, highly efficient back-office

processing services, and experienced medical professionals to create the best medical billing

software and practice management software to encompass the complete revenue cycle

management process.  Avisena's approach to medical billing and collections via its healthcare

software enables it to optimize the way medical offices run their businesses by improving

collections, dramatically reducing A/R balances, and increasing visibility and control with its

medical billing software.

       3.     Escobar is an individual who currently resides at 808 Brickell Key Dr., Apt. 1603,

Miami, Florida 33131.

       4.     This Court has original subject matter jurisdiction over the Federal claim asserted

in this action pursuant to 28 U.S.C. § 1331.

       5.     This Court also has supplemental jurisdiction over the State law claims asserted in

this action pursuant to 28 U.S.C. § 1367.

       6.     Venue is proper in this Court because Escobar resides in this District.  Further,

venue is proper in this Court because  a substantial part of the events or omissions giving rise to

the causes of action asserted herein occurred, in whole or in part, in this District.

## GENERAL ALLEGATIONS

       7.     Escobar was retained by Avisena as a consultant on or about July 15, 2002.

       8.     On or about January 1, 2003, Escobar was hired by Avisena as a Manager of

Operations or Director of Operations.

       9.     Escobar was subsequently promoted to a Vice President at Avisena.

      10.    In consideration and as a condition of Escobar's employment with Avisena,

Escobar executed an Employee Proprietary Information and Inventions Agreement (the

"Agreement").  (A true and correct copy of the Agreement is attached hereto as Exhibit A.)

2

11.     In conjunction with his employment with Avisena, Escobar was issued a parking card, two external hard drives and two tablet personal computers (all collectively, the "Company property").

12.     In conjunction with his employment with Avisena, Escobar was also issued an iPhone.

13.     Pursuant to the Agreement, Escobar agreed, <u>inter alia</u>, as follows:

> 1.1     *Recognition of Company's Rights; Nondisclosure.*  At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information, (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.  I will obtain the Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and/or incorporates any Proprietary Information.  I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns.  I have been informed that the unauthorized taking of the Company's trade secrets could result in civil and criminal liability.

> 1.2     *Proprietary Information.*     The term "Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company.  By way of illustration but not limitation, "Proprietary Information" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "Inventions");  information relating to products, and (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of other employees of the Company. Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information which is generally known in the trade or industry, which is not gained as a result of a breach of this

3

Agreement, and my own, skill, knowledge, know-how and experience to whatever extent and in whichever way I wish.

1.3     *Third Party Information.*  I understand, in addition, that the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.   During the term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by an officer of the Company in writing.

* * *

4.     *Additional Activities.*  **I agree that during the period of my employment by the Company I will not, without the Company's express written consent, engage in any employment or business activity other than for the Company. I agree further that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not induce any employee of the Company to leave the employ of the Company.**  I agree further that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not solicit the business of any client or customer of the Company (other than on behalf of the Company").

* * *

6.     *Return of Company Documents.*  **When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes memoranda, specification, devices, formulas, and documents,** together will all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.

(Emphasis added.)

14.     Pursuant to Section 7 of the Agreement, Escobar agreed that "the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for breach of this Agreement."

4

15.     Effective on or about September 18, 2009, Escobar's employment with Avisena was terminated by Avisena.

16.     Upon information and belief, on or about September 20, 2009, Escobar became an employee of CareCloud Corporation, a competitor of Avisena.  Upon information and belief, CareCloud is a software-enabled service provider to the health care industry that delivers financial, administrative and clinical systems to physicians, patients and other industry constituents.  More specifically, CareCloud provides revenue cycle management services, practice management systems, and electronic medical record systems.

17.     Notwithstanding Escobar's obligations pursuant to the Agreement, Avisena learned that prior to the termination of his employment from Avisena, Escobar was in contact with a real estate agent to obtain office space for CareCloud.

18.     In further violation of his Agreement, within one year after the termination of his employment, Escobar induced at least two (2) employees of Avisena to become employed by CareCloud.

19.     Further, Escobar continues to solicit other employees of Avisena to become employed by CareCloud.

20.     Moreover, Escobar further violated the Agreement by failing to deliver to the Avisena, when he left the employ of Avisena, any and all documents, together with copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.  More specifically, Escobar deleted and purged company emails from Avisena's computer located in the office in which he worked at or about the time when he left the Company's employ.  Escobar was not authorized to delete and purge the emails.

5

21.     Furthermore, Escobar violated the Agreement by failing to return the Company property to Avisena, its true owner.

22.     On September 21, 2009, Avisena's President and CEO, Miguel Maseda, sent to Escobar a letter (the "letter"), a copy of which is attached hereto as Exhibit B.  In the letter, Mr. Maseda demanded Escobar, inter alia, to return to Avisena:

> any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies of thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company pursuant to Section 6 of your Employee Proprietary Information and Inventions Agreement.

23.     Pursuant to the letter, Escobar was required to return to Avisena the Company's property by October 2, 2009.

24.     As of Avisena's filing of this Complaint, Escobar has not returned the Company's property to Avisena.

25.     On October 5, 2009, Escobar returned to Avisena the iPhone that was issued to him during his employment with Avisena.  Before its return, Escobar deleted and purged all electronically stored information from the iPhone.  Escobar was not authorized to delete and purge the electronically stored information from the iPhone.

26.     Accordingly, Avisena brings this action against Escobar for injunctive relief pursuant to § 542.335, Fla. Stat. and monetary relief for deliberate and ongoing breach of the Agreement, including the exclusive employment, non-solicitation, and return of company documents provisions of the Agreement, and for monetary relief for Escobar's violation of the CFAA and conversion.

27.     All conditions precedent to bringing this lawsuit have been satisfied or waived.

6

28.     Due to the unlawful actions of Escobar, Avisena has been forced to retain the undersigned law firm to protect its interests in this matter and is required to pay a reasonable fee for its services.

## COUNT I
### (Breach of Contract/Injunctive Relief against Escobar)

29.     Avisena repeats and realleges the allegations contained in paragraphs 1 through 28 above as though fully set forth herein.

30.     As described herein, Escobar knowingly, and for sufficient consideration, executed the Agreement as a condition of his employment with Avisena.  The Agreement is a valid, binding and enforceable contract.

31.     Escobar has intentionally and materially breached the Agreement by, inter alia, (i) prior to the termination of his employment from Avisena, being in contact with a real estate agent to obtain office space for CareCloud; (ii) within one year after the termination of his employment, inducing at least two (2) employees of Avisena to become employed by CareCloud; (iii) deleting and purging company emails from Avisena's computer located in the office in which he worked at or about the time when he left the Company's employ; and (iv) deleting and purging all electronically stored information from Avisena's iPhone, which was entrusted to Escobar during his employment with Avisena.

32.     Escobar expressly agreed in Section 7 of the Agreement that "the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for breach of this Agreement."

33.     Avisena has performed and/or complied with all terms and conditions of the Agreement, including any conditions precedent to the relief sought herein.

7

34.     Avisena has legitimate business interests justifying the restrictive covenants, including without limitation, protection of Avisena's valuable confidential business and proprietary information, substantial relationships with specific prospective or existing customers and clients, substantial relationships with its employees, and customer and client goodwill.

35.     By reason of Escobar's ongoing breaches of the Agreement, Avisena has suffered and will continue to suffer irreparable injury and is entitled to a legal presumption of irreparable injury under § 542.335(1)(j), Fla. Stat.

36.     Avisena has no adequate remedy at law.

37.     Avisena has a substantial likelihood of success on the merits of this action.

38.     An injunction will serve the public interest.

39.     Pursuant to § 542.335, Fla. Stat., Avisena is entitled to an award of attorneys' fees and costs it has incurred and will continue to incur in bringing and prosecuting this action.

WHEREFORE, Avisena prays that the Court grant temporary and permanent injunctive relief to it and enter an Order (i) enjoining Escobar from violating Section 4 of the Agreement, including without limitation, from inducing any employee of the Company to leave the employ of the Company for one (1) year period; (ii) enjoining Escobar from otherwise violating the Agreement and the restrictive covenants contained therein; (iii) ordering that Escobar pay Avisena's costs, including reasonable attorneys' fees, incurred in bringing and prosecuting this action, pursuant to § 542.335, Fla. Stat.; and (iv) granting such other and further relief as the Court deems just and proper.

8

<u>**COUNT II**</u>
**(Breach of Contract/Damages Against Escobar)**

40.     Avisena repeats and realleges the allegations contained in paragraphs 1 through 28 above as though fully set forth herein.

41.     As described herein, Escobar knowingly, and for sufficient consideration, executed the Agreement as a condition of his employment with Avisena.  The Agreement is a valid, binding and enforceable contract.

42.     Escobar has intentionally and materially breached the Agreement by, <u>inter</u> <u>alia</u>, (i)  prior to the termination of his employment from Avisena, being in contact with a real estate agent to obtain office space for CareCloud; (ii) within one year after the termination of his employment, inducing at least two (2) employees of Avisena to become employed by CareCloud; (iii) deleting and purging emails from Avisena's computer located in the office in which he worked at or about the time when he left the Company's employ; and (iv) deleting and purging all electronically stored information from Avisena's iPhone, which was entrusted to Escobar during his employment with Avisena.

43.     Avisena has performed and/or complied with all terms and conditions of the Agreement, including any conditions precedent to the relief sought herein.

44.     By reason of Escobar's breach of the Agreement, Avisena has been damaged.

WHEREFORE, Plaintiff Avisena respectfully requests that this Court enter judgment in favor of Avisena and against Escobar for damages, interest, and attorneys' fees and costs, and grant such other and further relief as the Court deems just and proper.

9

## COUNT III
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

45.     Avisena repeats and realleges the allegations contained in paragraphs 1 through 28 above as though fully set forth herein.

46.     By deleting and purging company emails from Avisena's computer located in the office in which he worked at or about the time when he left the Company's employ, at or around the time when he left the employ of the Company, and by deleting and purging electronically stored information from the Avisena's iPhone that was provided to Escobar during his employment with Avisena, in violation of 18 U.S.C. § 1030(a)(5)(A), Escobar knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization to Avisena's computer and iPhone, which are "protected computers" as defined in 18 U.S.C. § 1030(e)(2).

47.     As a result of Escobar's conduct, Avisena was damaged, in that it suffered an impairment to the integrity or availability of its data and information.

48.     As a direct and proximate result of Escobar's conduct, Avisena has suffered loss in excess of $5,000 because of interruption of service, including, inter alia, the cost of responding to Escobar's actions, conducting a damage assessment, lost revenue, and other compensatory damages and reasonable costs.

WHEREFORE, Plaintiff Avisena respectfully requests that this Court enter judgment in favor of Avisena and against Escobar for damages, interest, and attorneys' fees and costs, and grant such other and further relief as the Court deems just and proper.

## COUNT IV
**(Conversion)**

49.     Avisena repeats and realleges the allegations contained in paragraphs 1 through 28 as though set forth fully herein.

50.     As described above, Avisena was the owner of the parking card, two external hard drives and two tablet personal computers (collectively, the "Company property"), which were entrusted to Escobar during the term of his employment.

51.     Upon the termination of his employment, Escobar has wrongfully and without authorization converted the Company property for his own use.

52.     On September 21, 2009, Avisena demanded Escobar to return the Company property to Avisena, its true owner.

53.     As of the filing of this Complaint, Escobar has failed to return the Company property to Avisena.

54.     As a result of Escobar's improper and unlawful conduct and unauthorized conversion of the Company property, Avisena has been damaged.

WHEREFORE, Plaintiff Avisena respectfully requests that this Court enter judgment in favor of Avisena and against Escobar for damages, interest, and attorneys' fees and costs, and grant such other and further relief as the Court deems just and proper.

11

Dated this 6th day of October, 2009.

PROSKAUER ROSE LLP
*Attorneys for Plaintiff Avisena, Inc.*
2255 Glades Road, Suite 340 West
Boca Raton, Florida 33431
Telephone: (561) 241-7400
Facsimile: (561) 241-7145

By:
   Allan H. Weitzman, Esq.
   Florida Bar No. 0045860
   aweitzman@proskauer.com
   Andrea R. Bernstein
   Florida Bar No. 0516511
   abernstein@proskauer.com

12

**VERIFICATION**

_M. Ma_

Date: 10/6/2009

STATE OF FLORIDA          )
                          ) ss.
COUNTY OF __DADE__        )

Before me, the undersigned authority, on October 6th, 2009, personally appeared
_MIGUEL MASEDA_, who, after being duly sworn, deposes and says that the allegations in
the Verified Complaint are true and correct. He is (personally known) to me/produced
_____ as identification and did take an oath.

_Marta E. Morales_

NOTARY PUBLIC

Printed Name of Notary:
Commission Expires:

Marta E. Morales
COMMISSION # DD736630
EXPIRES: NOV. 26, 2011
WWW.AARONNOTARY.com

13

# EXHIBIT A



## EMPLOYEE PROPRIETARY INFORMATION
## AND INVENTIONS AGREEMENT

In consideration of my employment or continued employment by Avisena, Inc (the "Company"), and the compensation now and hereafter paid to me, I hereby agree as follows:

1.     *Nondisclosure*

      1.1     *Recognition of Company's Rights; Nondisclosure.*  At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.  I will obtain the Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and/or incorporates any Proprietary Information.  I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns.  I have been informed and acknowledge that the unauthorized taking of the Company's trade secrets could result in civil and criminal liability.

      1.2     *Proprietary Information.*  The term "Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company.  By way of illustration but not limitation, "Proprietary Information" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "Inventions"); information relating to products, and (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of other employees of the Company.  Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information which is generally known in the trade or industry, which is not gained as result of a breach of this Agreement, and my own, skill, knowledge, know-how and experience to whatever extent and in whichever way I wish.

      1.3     *Third Party Information.*  I understand, in addition, that the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  During the

term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by an officer of the Company in writing.

       1.4    *No Improper Use of Information of Prior Employers and Others.* During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person. I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, which is common knowledge in the industry or otherwise legally in the public domain, or which is otherwise provided or developed by the Company.

      2.    *Assignment of Inventions.*

       2.1    *Proprietary Rights.* The term "Proprietary Rights" shall mean all trade secret, patent, copyright, mask work and other intellectual property rights throughout the world.

       2.2    *Prior Inventions.* Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on *Exhibit A* (Previous Inventions) attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "*Prior Inventions*"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in Exhibit A but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. A space is provided on Exhibit A for such purpose. If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

       2.3    *Assignment of Inventions.* Subject to Sections 2.4, and 2.6, I hereby assign and agree to assign in the future (when any such Inventions or Proprietary Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect

thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to the Company, or to a third party as directed by the Company pursuant to this Section 2, are hereinafter referred to as "Company Inventions."

       2.4    *Obligation to Keep Company Informed.*  During the period of my employment and for twelve (12) months after termination of my employment with the Company, I will promptly disclose to the Company fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others. In addition, I will promptly disclose to the Company all patent applications filed by me or on my behalf within a year after termination of employment.

       2.5    *Government or Third Party.*  I also agree to assign all my right, title and interest in and to any particular Company Invention to a third party, including without limitation the United States, as directed by the Company.

       2.6    *Works for Hire.*  I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

       2.7    *Enforcement of Proprietary Rights.*  I will assist the Company in every proper way to obtain, and from time to time enforce, United States and foreign Proprietary Rights relating to Company Inventions in any and all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Proprietary Rights and the assignment thereof. In addition, I will execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee. My obligation to assist the Company with respect to Proprietary Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate after my termination for the time actually spent by me at the Company's request on such assistance.

In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Proprietary Rights assigned hereunder to the Company.

       3.    *Records.*  I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) of all Proprietary Information developed by me and all Inventions made by me during the period of my

employment at the Company, which records shall be available to and remain the sole property of the Company at all times.

4.     *Additional Activities.*  I agree that during the period of my employment by the Company I will not, without the Company's express written consent, engage in any employment or business activity other than for the Company.  I agree further that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not induce any employee of the Company to leave the employ of the Company.  I agree further that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not solicit the business of any client or customer of the Company (other than on behalf of the Company").

5.     *No Conflicting Obligation.*  I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company.  I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

6.     *Return of Company Documents.*  When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.  I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.  Prior to leaving, I will cooperate with the Company in completing and signing the Company's termination statement.

7.     *Legal and Equitable Remedies.*  Because my services are personal and unique and because I may have access to and become acquainted with the Proprietary Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

8.     *Notices.*  Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing.  Such notice shall be deemed given upon personal delivery to the appropriate address or if sent by certified or registered mail, three (3) days after the date of mailing.

9.     *Notification of New Employer.*  In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

10.     *General Provisions.*

10.1     *Governing Law; Consent to Personal Jurisdiction.*  This Agreement will be governed by and construed according to the laws of the State of Florida; as such laws are

applied to agreements entered into and to be performed entirely within Florida between Florida residents. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Miami-Dade County, Florida for any lawsuit filed there against me by Company arising from or related to this Agreement.

10.2 *Severability.* In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

10.3 *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

10.4 *Survival.* The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

10.5 *Employment.* I agree and understand that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

10.6 *Waiver.* No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

10.7 *Entire Agreement.* The obligations pursuant to Sections 1 and 2 of this Agreement shall apply to any time during which I was previously employed, or am in the future employed, by the Company as a consultant if no other agreement governs nondisclosure and assignment of inventions during such period. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

This Agreement shall be effective as of the first day of my employment with the Company, namely: ___*07/15*___ , 20*02*.

**I have read this Agreement carefully and understand its terms. I have completely filled out Exhibit A to this Agreement.**

Dated: _07/15/2002_

_Paolar_

Signature

_CARLOS E. ESCOBAR_

(Printed Name)

Accepted and Agreed To:
Avisena, Inc.

By:

Title:

(Address)

**Exhibit A**

**PREVIOUS INVENTIONS**

TO:    [Company]

FROM:    CARLOS ESCOBAR

DATE:    01 / 06 / 2002

SUBJECT: **Previous Inventions**

1. Except as listed in Section 2 below, the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by [Company] (the "Company") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

    ☑    No inventions or improvements.

    ☐    See below:

_____

_____

_____

☐    Additional sheets attached.

2. Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| Invention or Improvement | Party(ies) | Relationship |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

☐    Additional sheets attached.

# EXHIBIT B

September 21, 2009

Dear Mr. Escobar:

This is a demand for delivery of any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies of thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company pursuant to Section 6 of your Employee Proprietary Information and Inventions Agreement.

As you know, your employment was terminated on September 18, 2009.  Section 6 provides in relevant part:

> *Return of Company Documents.* When I leave the employee of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies of thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.  I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

By way of illustration but not limitation, the term "Inventions" as defined in Section 1.2 includes trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; the term "Third Party Information" as defined in Section 1.3 includes third parties confidential and proprietary information; and the term "Proprietary Information" as defined in Section 1.2 includes: (a) Inventions, information relating to products, and (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers, and (c) information regarding the skills and compensation of other employees of the Company.

You are hereby instructed to satisfy immediately, but in any event no later than October 2, 2009, your contractual obligations under Section 6 of your Employee Proprietary Information and Inventions Agreement and to acknowledge in writing that you have done so.

Avisena   •   6100 Blue Lagoon Dr., Suite 450   •   Miami, FL 33126   •   Phone: 786-621-4400   •   www.avisena.com

Also, we remind you of your Nondisclosure contractual obligations as set forth in Section 1. The Company expressly reserves all of its contractual and other rights and remedies.

Sincerely,

Miguel Maseda
President and CEO
Avisena, Inc.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**ELECTRONIC**

**Oct. 6, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| AVISENA, INC., a Florida corporation | CARLOS E. ESCOBAR |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Allan H. Weitzman, Esq., Proskauer Rose, LLP, 2255 Glades Road, Suite 340W, Boca Raton, FL 33431, (561) 241-7400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

*09 CV 23015 JEAN LENARD GARBER*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veteran's) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 1030, et seq.
Brief description of cause:
Computer Fraud and Abuse Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  10/6/09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  126402    AMOUNT  350.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____